L. W. THOMAS, Appellant, v. THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Appellee.

Railroads: DUTY TO TRESPASSER: *Evidence.* Where an action for injuries received by a child was tried on two theories—one that the child was a licensee, the other that he was a trespasser— defendant conceding that the engineer alone kept a lookout, and then only when not otherwise engaged—there was no error in denying plaintiff the right to show whose duty it was to keep a lookout, there being no dispute on this proposition.

*Same.* Where plaintiff's minor child was injured while trespassing on a railroad track, and was not seen by the railroad company's employes in time to have stopped the train, evidence of the condition of the engine was immaterial.

*Discretion.* In an action against a railroad company to recover for injuries to a child, it was no abuse of discretion to admit evidence on behalf of defendant, after plaintiff's counsel had finished his opening argument.

*Instructions.* Instructions in an action for injuries to a child presented two theories of the case—one that the child was a licensee; the other that he was a trespasser. On the latter theory, the court instructed that it was not what defendant's employes could have seen, but what they did in fact see of the child, and what they did on seeing him. Another instruction stated that "the employes, if they saw the child, must have known that he was too young to help himself." *Held,* that the instruction with regard to trespassers was not erroneous, as eliminating the question of what the employes by ordinary care might have seen, since the company owed no duty to trespassers, and the relaxation of this rule, in case of children, was provided for by other instructions.

*Same.* Where a child was injured while trespassing on the track of a railroad company, an instruction, in an action for such injuries, is not erroneous, for limiting the knowledge of the child's presence to the engineer, and not including other officers of the train, since the company was under no obligation to look out for trespassers.

*Same.* An instruction, in an action for injuries received by a child while trespassing on a railroad track, to the effect that if defendant railroad's employes negligently or carelessly looked down the track, and failed to observe children thereon, there would be no liability, is proper.

*Same.* In an action for injuries to a child received while trespassing on a railroad track, an instruction to the effect, "even though the engineer saw plaintiff in a place of peril on the track, still he cannot recover, unless the engineer actually saw and knew that he was a child so young as not to be able to get out of danger; but if you find that the engineer saw him in the place of peril, and did not know that he was so young as to be unable to take care of himself, then it would be the engineer's duty to keep a lookout to see whether the child did get out of the way, or was of such tender years as to be unable to care for himself, and it would be his duty to have such control of his engine as to be able to stop in time to prevent the accident," was not inconsistent and contradictory, and hence not error.

*Same.* An instruction, in an action for injuries received by a child trespassing on a railroad track, that defendant's employes should exercise all the means at their command to stop the train after they saw the child on the track, sufficiently states the duty owing to trespassers by the railroad company.

INSTRUCTION:  *Construed.*  Where a father sued for injuries done his 4-year-old child, an instruction that to render defendant 1 railroad company liable plaintiff must have used reasonable care, etc., to restrain and keep his child at .home, and prevent the child from getting on defendant's track, was not objectionable, since it did not require plaintiff to keep his child in doors, but merely at home.

*Appeal from Marshall District Court.*—HON. GEORGE W. BURNHAM, Judge.

WEDNESDAY, MAY 22, 1901.

ACTION to recover damages caused by personal injuries to plaintiff's minor son, due, as is alleged, to the negligence of defendant's employes.    There was a trial to a jury, resulting in a verdict and judgment for defendant, and plaintiff appeals.—*Affirmed.*

*J. M. Parker* for appellant.

*J. C. Cook* and *Binford & Snelling* for appellee.

DEEMER, J.—This is the third time this case has been before us.    The former opinions will be found in 93 Iowa, 248, and 103 Iowa, 649.    The facts appearing on this third trial were not materially different from those developed on the other two, save that on this trial it appeared that the bridge at which the accident occurred was not over a public highway, but over a private farm crossing; that the ladder spoken of in the former trial was not on this bridge, but on an overhead public crossing located about 1,000 feet from the place where the children were injured; that the bridge where the children were hurt was between this overhead public crossing and the town of Rhodes; that the foot travel spoken of left the highway in the vicinity of the overhead crossing passing over defendant's track and the bridge where the accident occurred on the way to Rhodes, and that only a portion of such travel made use of the ladder at the over-

head crossing in reaching the track. A large portion of the travel left the highway before reaching the crossing, and reached the track by crossing the fields and crawling through wire fences. There was evidence to show that the ladder referred to was not placed at the bridge for the purpose of accommodating persons who wished to use the track for a footway, but for the use of defendant's employes, in repairing and inspecting the bridge. The right of way at the place in question was fenced, and the defendant attempted to keep it in repair, so as to deter persons from going on its right of way, but the fence was frequently torn down and as often repaired. The fence consisted of five or six wires, constructed on either side of the track, and negligence is not predicated on defendant's failure to keep this fence in repair. With these statements, in addition to those appearing in the former opinions, we are now ready to consider the errors assigned, and to deal with the propositions of law involved.

I. Plaintiff sues in his own behalf for injuries done his minor child, and must show his freedom from contributory negligence. In this connection the court gave the following instructions, which are complained of, to-wit: "No. 7. In order to render the defendant liable, the jury must find, from the preponderance of the evidence, that plaintiff had exercised all reasonable care, prudence, caution, and diligence to restrain and keep his child at home, and to prevent the child from getting upon the railway track. No. 8. If the plaintiff failed or neglected to exercise that degree of care, prudence, caution, and diligence to restrain and keep his child at home, and prevent the child from getting upon defendant's track, as an ordinarily careful, prudent, cautious, and diligent man should have exercised under like and similar circumstances, then you should find that the plaintiff was negligent in that respect, and return a verdict for the defendant." The child that was injured was 3 years and 9 months old. He was with another

child younger than himself, and for that reason was practically unattended. That it was the father's duty to use ordinary care, prudence and diligence to keep and prevent his getting on the railway track is clear. Whether or not he used this degree of care was a question of fact that was properly submitted to the jury. The instructions complained of did not compel the plaintiff to keep his child in the house, but at home. To allow a child 4 years old to go on a railway track unattended is clearly negligence. Whether or not due care was used to prevent his getting on the railway track was for the jury, under proper instructions. There seems to be no fault in the instructions given, unless they be construed to mean that plaintiff was required to keep his child in doors. We do not think they exact this requirement, and see no error of which plaintiff may complain. As supporting our conclusions, *vide Glassey v. Railway Co.*, 57 Pa., 172; *Cauley v. Railway Co.*, 95 Pa., 398 (40 Am. Rep. 664).

II. The instructions presented two theories of the case to the jury—one bottomed on the fact that the children were licensees or went on the track by reason of an implied invitation; and the other on the proposition that they were trespassers. After fully instructing on the first theory, the court took up the second, and on this instructed that it was not what defendant's employes could have seen, but what they did in fact see, of the children, and what they did after they saw the children on the track. These instructions are said to be erroneous, because they eliminate the question of what, by ordinary care, the employes might have seen. Appellant's claim in this respect is without merit. If the children were trespassers, the defendant owed them no duty until it saw them on the track, and in a place of danger. This is elementary. *Thomas v. Railway Co.*, 93 Iowa, 252; *Thomas v. Railway Co.*, 103 Iowa, 657. The court also instructed on this branch of the case that the employes, if they saw the child, must have known that he was too young to help himself.

It is no doubt true that the severity of the rule as to trespassers on railway property is greatly relaxed in case the trespassers are of tender years, but it must appear that the employes in charge of the train knew that the objects in front of them were children. When a person is seen ahead of the train, the employes in charge thereof have the right to assume that he will take care of himself, unless they have reason to believe that such person is not for some reason able to take care of himself. If the object turns out to be a child *non sui juris,* this is sufficient to give the employe warning, and after notice of that fact he must do all in his power to stop the train. See *Chrystal v. Railroad Co.,* 105 N. Y., 164 (11 N. E. Rep., 380); *Burg v. Railway Co.,* 90 Iowa, 119; *Masser v. Railway Co.,* 68 Iowa, 602. In the *Burg Case* it is said, in effect, that an engineer may rightly presume that a person on the track will leave it on the approach of a train, until the contrary is in some way manifested. But when he knows the persons are small children he has sufficient reason to believe they will remain, and is at once charged with the highest degree of care in their behalf. Until he knows that the objects are children, he has the right to assume that, whatever they are, they will leave the track. *McCracken v. Railway Co.,* 91 Iowa, 711, cited by appellant, is not in point. Moreover, the instruction was in exact accord with the one asked by plaintiff.

What we have just said answers one of the complaints made to the fourteenth instruction. Another complaint made of that portion of the charge is that it limits knowledge of the children's presence on the track to the engineer, although a fireman, a brakeman, and the conductor were also on the engine. There is no evidence in the case that any other person than the engineer looked ahead to see what was on the track. Indeed, the evidence shows that had the other employes looked they could not have seen the children; but as there was no evidence that

any of them did look, and as under this theory of the case they were under no obligations to look out for trespassers, there was no error in the instructions.

The instructions also limit the place of looking to two certain localities. As the only evidence to show negligence referred to these localities, and none other, there was no error.

Further complaint is made of the instructions because, in presenting the question of liability as to trespassers, the jury was told, in effect, that if defendant's employes negligently or carelessly looked down the track, and failed to observe the children, there would be no liability.

This instruction presents the law as we understand it. As the railway company was not required to keep a lookout for trespassers, and was only required to adopt all reasonable means to avoid injuring them, after their presence was discovered, it would not be liable for negligence of its employes in failing to look out for children on the track. In other words, it is no more responsible for negligence in looking than for failure to look at all. Appellant's contention that defendant's employes were required to keep a lookout is answered by what we have already said.

The engineer said in his testimony: "When passing switches, was going about six or eight miles per hour. After I looked west I started to prime the injector. I do not say the children were not there then. I did not see them. I took the bridge in with the rest of the track. During the time of priming the injectors went about eight or nine hundred feet. Then I looked out and saw something. Were about three hundred feet from the children." Instruction 15 reads as follows: "(15) Even though you may believe that the engineer did see these children from his engine at the west switches, or at the water tank, in a place of peril on the track or bridge, still the plaintiff cannot recover, unless you find and believe from all the evidence that the engineer actually saw and knew that they were children

so young as not to be able to take care of themselves and get
out of the way of danger; but if you find that the said en-
gineer did see these children, when at the west switches or at
the water tank, in a place of peril on the track and bridge,
and did not know at that time that they were so young as
not to be able to take care of themselves, then it would be
the duty of said engineer to keep a lookout to see whether or
not these children did get out of the way, or if they were of
such tender years as to be unable to take care of themselves;
and it would be his duty to have such control of his engine
so that he might prevent the accident when he did discover
such fact, if he found such to be the fact, that they had not
gotten out of the way, or that they were of such tender years
as not to be able to get out of the way. This is said to be in-
consistent and contradictory. We do not think so. After
stating a general rule as to the engineer's duty
towards the children the court proceeded to state
more particularly the engineer's duty, and to ex-
plain what was equivalent to actual knowledge
that the persons ahead of him on the track were chil-
dren. The latter part of the instruction is in exact accord
with appellant's contention, and we do think it contradicts
the initial statement.

   The sixteenth instruction required of defendant's em-
ployes the exercise of all the means at their command to stop
the train after they saw the children on the track. If the
children were trespassers, this was all that was re-
quired. Trains do not have to be equipped so that
they may be operated to avoid injuries to trespassers.
No duty is owing to such persons until their presence is dis-
covered, and then the duty is to use all reasonable means at
command to avoid injuring them. *Burg v. Railway Co.,
supra; Gaynor v. Railway Co.,* 100 Mass., 214 (97 Am.
Dec. 96) ;*Nicholson v. Railway Co.,* 41 N. Y., 525 ; *Larmore
v. Iron Co.,* 101 N. Y. App., 391 (4 N. E. Rep., 752). Cer-
tain instructions given at defendant's request are complained

of. They seem to announce correct rules of law, and need not be set out *in extenso.* The principles announced seem to be abundantly supported by authority, and we need only call attention to *Chrystal v. Railroad Co., supra,* as sustaining our views of the law. The plaintiff asked several instructions which were refused. In so far as they announced correct rules of law, they were embodied in the charge.

IV. Some complaints are made of the rulings on evidence. Most of them are answered by what we have already said as to the law in the case. None of them is of sufficient importance to justify separate consideration. The court denied the plaintiff the right to show whose duty it was to keep a lookout. If there had been any dispute on this proposition, the evidence might have been admissible on the first theory of the case, that is, that the children were licensees; but as it was practically conceded that no one kept a lookout except the engineer, and that he did so only when not engaged with other duties, there was no error. Certain evidence was offered by way of impeachment, but, as no foundation was laid therefor, there was no error. Evidence as to the condition of the engine was immaterial, on any theory of the case. Evidence was admitted on behalf of defendant after plaintiff's counsel had finished his opening argument. In this no abuse of discretion is shown. *McMeekin v. Worcester,* 99 Iowa, 243. We have now carefully considered all the points made by appellant's counsel, and reach the conclusion that there was no prejudicial error of which he may properly complain. The accident was an unfortunate one—one deeply to be regretted—but a jury, after a fair trial, has returned a verdict for defendant, and we see no reason for interfering therewith. This is the third trial, and as the last seems to have been squarely on the merits, and no prejudicial errors seem to have been committed, the parties should rest content with the verdict.—AFFIRMED.