PHILIP B. KIRKWOOD v. JOHN C. HOXIE AND EDMUND N. MELLOR.

*Mechanic's lien—Validity—Waiver—Personal judgment.*

1. Under the mechanic's lien law of 1885, the lien of a material-man attached to the land when the materials for a structure to be erected thereon were furnished.

2. The lien created by the mechanic's lien law of 1885 attached to the land, except as to purchasers or incumbrancers in good faith without notice, whose rights accrued after the 90 and 30 days, respectively, within which contractors and subcontractors were required to file a statement of their lien, independently of the filing of such statement and of proceedings to enforce the lien.[1]

3. The lien of a material-man, acquired under the mechanic's lien law of 1885, is held not to have been lost by the attempted enforcement of his claim under the law of 1887, before that act was declared unconstitutional in *Lumber Co. v. Loan & Trust Co.*, 77 Mich. 199, resulting in the rendering of a valid personal judgment in his favor for the amount of his claim, which was, by consent of the parties in open court, declared to be a lien upon the land upon which the building was erected, the consent portion of the judgment being void as beyond the jurisdiction of the court; citing *Beach v. Botsford*, 1 Doug. 199; *Clark v. Holmes*, Id. 390; *Spear v. Carter*, 1 Mich. 19; *Wilson v. Davis*, Id. 156; *Farrand v. Bentley*, 6 Id. 281; *Allen v. Carpenter*, 15 Id. 25; *Moore v. Ellis*, 18 Id. 77; *Youngblood v. Sexton*, 32 Id. 406; *Thompson v. Association*, 52 Id. 522.

4. When a lien is once established, the burden is upon the owner of the estate charged to show its relinquishment, and, while

[1] See *Blakeley v. Moshier*, 94 Mich. 299.

this may be inferred from circumstances, it may also be rebutted.

5. A material-man will not waive his lien by taking a personal judgment against the debtor for the amount of his claim, under circumstances clearly showing an intention to preserve and rely upon the lien.

Appeal from Gogebic. (Haire, J.) Argued January 19, 1893. Decided March 10, 1893.

Bill to remove a cloud from title occasioned by a mechanic's lien. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*E. E. Osborn,* for complainant.

*C. F. Button,* for defendants.

HOOKER, C. J.    The complainant purchased the premises in controversy at administrator's sale, taking the usual administrator's deed. The license from the probate court upon which the sale was made directed that the property be sold "subject to all incumbrances, by mortgage or otherwise, existing at the time of the death of the deceased," John T. Atkinson. The report of sale shows that the complainant bought the property on September 10, 1889, for $25, "subject to all liens and incumbrances." At this time the defendants claimed to have a lien upon the premises, and the inference from the proof is strong that both complainant and the administrator, as well as the defendants, who were present, understood that the sale was subject to this lien; the same, with other incumbrances, amounting to the value of the land, viz., about $3,800.

The history of this lien is substantially as follows: The defendants furnished a quantity of building material for a store which was erected upon the premises, beginning in September, 1887, under a contract between themselves and Atkinson. On January 6, 1888, they filed a

a notice of lien in conformity to that prescribed by the
lien law of 1887.    Act No. 270, Laws of 1887.    This was
followed by proceedings under the same act, which on
November 13, 1888, culminated in a judgment in favor of
these defendants, against John T. Atkinson, for the sum
of $1,050 and costs, to which judgment was appended the
following, viz.:

"And, by consent of parties in open court, it is ordered
that the execution be stayed in this cause, without a
bond, until the first day of the next term of court, and
that the amount of this judgment is a lien upon the
property."

The costs were subsequently taxed at the sum of $73.
Soon after this, Atkinson, the judgment debtor, died.
Complainant, having purchased the premises, as already
stated, went into possession under his deed in November,
1889, and, learning that the lien law of 1887 had been
declared unconstitutional, on January 3, 1890, filed the
bill in this cause to remove the cloud occasioned by this
alleged lien.    On July 18, 1890, defendants filed a new
statement of their lien, in accordance with the law of
1885, and on September 1, 1890, they assigned their
interest in the lien and debt to the National Bank of
Oshkosh.

The decision of this Court in the case of *Spry Lumber
Co. v. Loan & Trust Co.*, 77 Mich. 199, 202, not only
declared the lien law of 1887 unconstitutional, but stated
that such statute, and "all its parts, must fall together,
leaving the law of the State where it was before the law
of 1887 was passed."    This decision leaves defendants'
lien to rest upon the law of 1885.    By the terms of that
act the lien attaches to the land when the vendor furnishes
material for a structure to be erected thereon under a
contract with the owner.    Act No. 216, Laws of 1885, §§
2, 3.    In this particular it differs from other lien laws,

and notably that of 1887 (3 How. Stat. § 8398c), which provides that a lien shall *not attach* unless a notice is filed with the register of deeds within 60 days, etc. The object of the Legislature in passing the law of 1885 appears to have been to create a subsisting lien · independent of the notice and proceedings to enforce it. They do not seem to be necessary to its existence, and only affect it when the interests of *bona fide* purchasers, etc., are involved. It would seem to follow that the defendants acquired a vested interest, in the nature of a mortgage or security, upon this land, of which they could not be deprived by a failure to file a statement of their claim in accordance with the law of 1885. Nor could the lien be lost by any change made by subsequent legislation, the right being vested under the law of 1885.

We may next inquire whether this lien has been lost by any act of the defendants. Previous to the passage of the act of 1887 the authority to enforce these liens had been vested in courts of chancery. An attempt was made by the act of 1887 to give this power· to a court of law, by authorizing the court, in an action upon the contract, to declare the judgment a lien upon, and enforce it against, the land. Defendants accordingly began an action and took a judgment against Atkinson, claiming a lien upon the premises, which, as already appears, the parties agreed should be a lien. Defendants contend that this is a valid judgment to the extent of establishing their lien, while complainant contends that it is a valid judgment, but only to the extent of making defendants ordinary judgment creditors, to the *exclusion* of their lien, which he claims was waived by their taking a personal judgment. We have no doubt that the judgment is valid as a personal obligation, as it was rendered in a proceeding which, in every respect, seems to have followed the course of an

ordinary action of *assumpsit,* but, aside from that, it was
an attempt on the part of the circuit court to do an act
beyond and outside of its jurisdiction.    To the extent of
making it a lien upon the land, the proceedings were
*coram non judice,* and void.    The consent of the parties
does not help the matter, under the well-settled rule that
consent cannot confer jurisdiction upon, or extend the juris-
diction of, a court, as to the subject-matter, beyond that
which the law confers.    *Beach v. Botsford,* 1 Doug. 199;
*Clark v. Holmes,* Id. 390; *Spear v. Carter,* 1 Mich. 19;
*Wilson v. Davis,* Id. 156; *Allen v. Carpenter,* 15 Id. 25;
*Farrand v. Bentley,* 6 Id. 281; *Moore v. Ellis,* 18 Id. 77;
*Thompson v. Association,* 52 Id. 522; *Youngblood v. Sexton,*
32 Id. 406.'

We may next inquire whether the defendants have waived
their lien by taking this personal judgment.    A lien once
established, the burden is upon the owner of the estate
charged to show its relinquishment, and, while this may
be inferred from circumstances, it may also be rebutted.
It is said by at least one author that "the question of
waiver is always one of intention."    Adams, Eq. 128,
129.    If so, it is necessarily one of fact.    *Cordova v.
Hood,* 17 Wall. 1, 9; *Coit v. Fougera,* 36 Barb. 195.    In
this case there is nothing to show such intention.    True,
a personal judgment was taken, but it was accompanied
by acts which clearly show an intention to preserve, rather
than to relinquish, the lien; and no effort has been made
to collect the judgment by the ordinary process of the
court.    It cannot be successfully contended that the taking
of the judgment, alone, would have such effect.    Many cases
hold that the substitution of one form of personal liability for
another leaves the lien unaffected.    *Cordova v. Hood,* 17
Wall. 1; *Fish v. Howland,* 1 Paige, 20; *Warner v. Van
Alstyne,* 3 Id. 513; *Shirley v. Sugar Refinery,* 2 Edw. Ch.

505; *Vail v. Foster*, 4 N. Y. 312; *Blackburne v. Gregson*, 1 Cox Ch. 90; *Mackreth v. Symmons*, 15 Ves. 329; *Garson v. Green*, 1 Johns. Ch. 308; *Ex parte Loaring*, 2 Rose, B. C. 79; *Tardiff v. Scrughan*, 1 Bro. C. C. 423. Certainly, in this case, when complainant had full notice of the lien, and the judgment was taken under circumstances clearly showing an intention to preserve and rely upon it, the defendants should not be held to have waived their rights.

Having reached the conclusion that defendants' lien attached at the time that they furnished the material for Atkinson, it logically follows that, as against complainant, it existed, as a valid charge upon the land, at the time the bill was filed, and the assignment subsequently made cuts no figure in the case.

The decree will be affirmed, with costs of both courts.

The other Justices concurred.