In re SUTTON.

(District Court, E. D. Michigan, S. D.   July 24, 1917.)

No. 3118.

1. COURTS ⟨⟩⟩365—UNITED STATES DISTRICT COURT—FOLLOWING DECISION OF STATE COURT.
   In determining whether securing a judgment on two of a series of notes given for motors purchased under conditional sale made in Michigan passed title to the buyer the decisions of the Michigan Supreme Court will be followed.

2. BANKRUPTCY ⟨⟩⟩188(2)—TITLE TO PROPERTY—CONDITIONAL SALE.
   Motors had been purchased by bankrupt under a conditional sale. Part of the price had been paid in cash, and notes given for the balance. The first note had been paid in full and a small payment made on the second. The assignee of the seller recovered a judgment against the bankrupt for the balance due on the second note and the amount of the third note. *Held*, that the taking of a judgment was not an election to make the sale absolute transferring title to the buyer.

In Bankruptcy. In the matter of Del T. Sutton, bankrupt. Petition for the review of an order of the referee in bankruptcy granting the petition of Fred W. Haines for the reclamation of five motors claimed by the trustee to belong to the bankrupt estate. Order of referee affirmed.

Harold H. Emmons, of Detroit, Mich., for petitioner.
Lloyd T. Chockley, of Detroit, Mich., for trustee.

TUTTLE, District Judge. This matter comes before the court on a petition for the review of a certain order of the referee in bankruptcy for the Southern division granting the petition of Fred W. Haines, assignee of the Standard Electric Company, for the reclamation of five motors, claimed by the trustee to belong to the bankrupt estate. The facts, which are undisputed, are thus stated in the certificate of the referee, whose correctness in this respect is not challenged by either party:

"On February 8, A. D. 1915, the Standard Electric Company, a corporation, entered into a contract with Del T. Sutton for the sale of certain motors. Eight dollars fifty-seven cents ($8.57) of the purchase price was paid in cash, and for the balance Mr. Sutton gave 24 notes of fifteen dollars ($15.00), payable one each month. The form of the note was an ordinary promissory note by which the bankrupt agreed to pay to the order of the Standard Electric Company fifteen dollars ($15). The first note of fifteen dollars ($15.00) was paid; five dollars ($5.00) was paid on the second note; but no further payments were made. On October 19, 1915, a judgment was rendered in favor of Fred W. Haines against the bankrupt for twenty-five dollars ($25.00), the balance due on the second note and the amount of the third note, together with the costs of suit.

"All of the other notes are still in the possession and are the property of Fred W. Haines, assignee.

"The contract entered into between the parties provides for the sale by the Standard Electric Company to the bankrupt of five electric motors. It provides the terms of payment, as above specified, eight dollars fifty-seven cents ($8.57) cash and 24 notes of fifteen dollars ($15.00) each, due each month, the

first note falling due March 15, A. D. 1915. So far as material, the other parts of the contract are as follows: 'It is expressly agreed and understood that this order shall not be countermanded and that the goods shall remain and be held by the purchaser as exclusive property of the Standard Electric Company, until the purchase money shall have been fully paid, as agreed herein, notes and drafts not to be considered as payment until they have been redeemed, and if default be made in payment, the goods to be surrendered to the Standard Electric Company, or order, on demand, and all payments forfeited.'

"It was not contemplated by either of the parties at the time of the sale of the motors that said motors were to be resold, but they were purchased for the purpose of being operated in the bankrupt's place of business.

"It was the claim of the trustee that by the bringing of suit and the entry of judgment for two of the notes that thereby the title of the motors passed to the bankrupt. * * *

"The only question to be determined is whether or not the taking of judgment upon 2 of a series of 24 notes, made for the purpose of evidencing the debt due upon contract for conditional sale, the judgment and none of the other notes having been paid, transfers the title to the buyer of property which is purchased for his own use, and not for resale."

[1] If this question has been passed upon by the Michigan Supreme Court, this court will follow and adopt the decisions of that court upon such question. Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Mishawaka Woolen Mfg. Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109. As was said in the case first cited:

"In bankruptcy the construction and validity of such a contract must be determined by the local laws of the state."

[2] It is urged by the trustee that by reducing two of these notes to judgment the vendors elected to make the sale absolute, and therefore cannot now reclaim the property which was the subject-matter of this contract. In support of this contention the trustee cites two Texas cases, Merchants' & Planters' Bank v. Thomas, 69 Tex. 237, 6 S. W. 565, and Parlin & Co. v. Harrell, 8 Tex. Civ. App. 368, 27 S. W. 1084. Both of these cases involved a transfer of notes received by the vendors in a conditional sale from the vendee, as security for the payment of the purchase price, and it was held in both cases that by such transfer the vendors elected to convey to the vendee title to the property sold under such conditonal sale. This, of course, is a different situation from that presented there. As was pointed out in the case first cited:

The vendors, "having placed the notes beyond their own reach, could not reclaim the property, for, in order to do so, they were obliged to cancel the notes or return them to the vendees. But the effect of the transfer was to assign to the indorsees the right to enforce against the vendee the collection of the notes. This was the only right they did possess, and the vendors intended to confer it upon them by means of the indorsement, and at the same time to divest themselves of all right to the property. Having elected to have the notes enforced and abandoned their right to claim the property, the title vested in Boussel & Seisfield," the vendees.

This decision was followed in the later case cited which involved substantially the same facts.

The trustee quotes from 35 Cyc. 696, as follows:

"The seller cannot resort to more than one remedy, but must elect which he will pursue; and generally an action and recovery of a judgment for the price operates as a confirmation of the sale, precluding the seller from maintaining an action to recover the goods."

On the same page from which this language is quoted are cited in support thereof cases from several states; but among the states referred to as holding contra is included Michigan. The trustee cites and relies upon the case of Button v. Trader, 75 Mich. 295, 42 N. W. 834. In this case one Strub and one Donally were joint owners of certain personal property. Donally sold his one-half interest to Strub, upon conditional sale with reservation of title. Thereafter Strub undertook to sell to the defendants the whole of such property, claiming to be the owner thereof. Strub not having paid Donally for his one-half interest, the latter brought suit against the former, and made the vendees from Strub garnishee defendants.

The vendees paid to Donally the balance of the purchase price, which they had agreed to pay to Strub, and after such payment Donally recognized them as the sole owners of the property. Subsequently the assignee of Strub brought this action against the latter's vendees to recover the amount thus paid by the vendees to Donally. Among other things, the court said:

"Donally, when he found the property passed by Strub as his own to the defendants, if his claim as testified to by him was correct, had two courses open to him to pursue. He could have taken measures to recover his property of the defendants, or he could have affirmed the sale of Strub to them, and looked to Strub for the value of his property. He chose the latter course. He elected to pursue his remedy against Strub, and now has a judgment against him, not only for the full amount of his interest in the property, but for all that Strub then owed him on any account. Having thus elected to confirm the sale of the property by Strub to the defendants, and having recovered a judgment for the value of his interest in the same against Strub, which is now in force, the property was thereby secured in the defendants. and the consideration for the note became a good one. Having elected to place his remedy against Strub, he cannot now turn round, repudiate such election, and maintain a claim to the property."

The decision in this case is clearly inapplicable to the facts in the present case.

The trustee refers to, but seeks to distinguish, the case of Canadian Typograph Co. v. Macgurn, 119 Mich. 534, 78 N. W. 542. In this case the defendant bought a bicycle from the plaintiff under a contract reserving the title to the property in the plaintiff until such bicycle had been paid for. The plaintiff rendered a statement of account to the defendant, and afterwards began an action in assumpsit in a Canadian court based upon such account. The summons was served in Detroit, and a judgment was taken on such summons. It was admitted that this foreign judgment had no force in this country, and also that any property of the defendant in Canada might be seized upon such judgment. Afterwards plaintiff brought this action of replevin against the defendant for the recovery of possession of this property. From a judgment on a verdict directed in favor of the plaintiff, the defendant appealed, assigning error upon the refusal to direct a verdict for the

defendant. In affirming the judgment, the Michigan Supreme Court said:

"Counsel contend that, by bringing assumpsit, the plaintiff elected its remedy, and cannot now resort to replevin. The contract binds the defendant to purchase, and provides for a settlement. It reserves the title in the plaintiff until the settlement is fully satisfied. The record shows an account rendered, though it is not clear that an adjustment of accounts was had; but, whether there was or not, the contract reserves title until the same is satisfied. In the case of Fuller v. Byrne, 102 Mich. 461 [60 N. W. 980], the court held that the fact that a personal judgment was rendered was not sufficient to pass the title. In that case the contract provides that 'the said instrument [a piano] is and shall remain the property of Estey & Camp until each and every of said amounts, and interest thereon, and any judgment rendered thereon, is paid in full.' The language of the contract in the present case is not the same, but we think that it evinces an intention that the title should not pass until the wheel should be paid for. Again, if the doctrine of merger can be said to have any application in such cases, it may be doubted whether anything less than a judgment in a case where the plaintiff has a full and complete opportunity to recover his whole demand against his debtor will suffice. Thus, in the case of Toby v. Brown, 11 Ark. 308, it was held that a judgment against a steamboat, that being a judgment in rem, was not enforceable against the property of the owners, if unsatisfied, and could not be pleaded in bar to a subsequent action."

The trustee quotes the following language from that opinion, as the concluding sentence of the court:

"Furthermore, it is commonly held that a former judgment, unsatisfied, does not merge the original cause of action."

An examination, however, of the opinion, shows that immediately after the sentence just quoted the court said:

"But we need not decide this question, as we think the case within the rule of Fuller v. Byrne, supra."

I am of the opinion that the decision in Canadian Typograph Co. v. Macgurn, controls the present case, and is authority for the ruling and order of the referee.

It is urged that the case of Fuller v. Byrne, cited in the opinion just quoted, is distinguishable from the present case, and is not authority for the decision in Canadian Typograph Co. v. Macgurn, supra.

I cannot, of course, hold that the Michigan Supreme Court erred in basing if it did, its decision in Canadian Typograph Co. v. Macgurn, upon Fuller v. Byrne, even if I were disposed to do so. I think, however, that the court was justified in citing the last mentioned case. In that case plaintiffs had delivered to one Marquardt a piano under a conditional contract of sale containing the following clause:

"The said instrument * * * is and shall remain the property of [said] Estey & Camp until each and every of said amounts, and interest thereon, and any judgment rendered thereon, is paid in full."

This piano was seized and taken from the possession of the conditional sale purchaser, on an execution, and plaintiffs brought this action of replevin against the sheriff to recover possession of such piano. It appeared that before the sheriff had levied his execution, the plaintiffs had brought suit against Marquardt and obtained personal judgment for the amount due on the contract, and it was contended that

plaintiffs had thereby relinquished their right to recover possession of this property. The trial court directed judgment for plaintiffs and the defendants appealed. In affirming the judgment, the Supreme Court said:

"The court below was correct in so finding. The plaintiffs and Marquardt had entered into a contract by which the title to the property was to remain in the vendors until the 'amounts, and interest thereon, and any judgment rendered thereon, is paid in full.' Under this contract the vendors had the right to obtain judgment against the vendee for the amount due, and interest thereon, and the title was not to pass until such judgment was paid. There is no intention shown here to release the lien or pass the title. The mere fact of personal judgment was not, under the contract, to release the lien or pass title, until judgment paid. See Kirkwood v. Hoxie, 95 Mich. 66 [54 N. W. 720, 35 Am. St. Rep. 549] and cases there cited."

In the case of Kirkwood v. Hoxie, 95 Mich. 62, 54 N. W. 720, 35 Am. St. Rep. 549, referred to in the opinion last quoted, it was held that the mere recovery of a personal judgment by the holder of a mechanic's lien against the owner of the premises covered by such lien, for the amount due by the latter to the former, and secured by such lien, does not necessarily constitute a waiver of the right to enforce such lien, the court saying among other things:

"We may next inquire whether the defendants have waived their lien by taking this personal judgment. A lien once established. the burden is upon the owner of the estate charged to show its relinquishment, and, while this may be inferred from circumstances, it may also be rebutted. It is said by at least one author that 'the question of waiver is always one of intention.' Adams, Eq. 128, 129. If so, it is necessarily one of fact. Cordova v. Hood, 17 Wall. 1–9 [21 L. Ed. 587]; Coit v. Fougera, 36 Barb. [N. Y.] 195. In this case there is nothing to show such intention. True, a personal judgment was taken, but it was accompanied by acts which clearly show an intention to preserve, rather than to relinquish, the lien; and no effort has been made to collect the judgment by the ordinary process of the court. It cannot be successfully contended that the taking of the judgment, alone, would have such effect."

It is finally insisted that the order complained of is contrary to the rule announced in the case of Atkinson v. Japink, 186 Mich. 336, 152 N. W. 1079, which it is urged controls this case. The facts in that case are thus stated in the opinion of the court:

"Plaintiff sold an automobile to defendant for $650. One hundred and forty dollars was paid in cash, and two notes for $185 and $325, respectively, were executed by defendant, payable to plaintiff. Each note reserved title to the automobile in plaintiff until it was paid, with the right to declare the note due and take possession of the car at any time plaintiff deemed himself insecure; to sell at public or private sale, and indorse the amount received upon the note. Plaintiff sold the notes, indorsing them, but not to the same purchaser. The smaller note falling due, plaintiff took it up from the purchasing bank, asked defendant to pay it, who refused to do so."

Plaintiff thereupon brought an action of replevin against the purchaser to recover possession of this automobile. The trial court directed a verdict for plaintiff, and defendant appealed to the Supreme Court, contending, among other things, that by transfer of his note any title which plaintiff might have had by virtue of such note in the machine passed from him to the defendant, as buyer of the machine. In affirming the judgment, the Supreme Court used the following language:

"The idea of a lien reserved by the vendor is not out of harmony with the idea of an assignment of the lien, with the assignment, or sale, of the notes; a passing of the security as a right appertaining to the choses in action. It is reasonable, therefore, to say, and the conclusion is abundantly supported by authority, that whoever held one of the notes as owner possessed also the right, upon default in payment of the note, to possession of the car. What plaintiff will do with the car we cannot know. Treating the sale of each note as an assignment pro tanto of the security, it is to be presumed that he will not invade any right of the holder of the other note. But I think the defendant was not entitled, as against either note holder, to retain possession of the car. As to him it can be sold but once, and the sum received applied upon his debt."

It is readily apparent that this case is not in point here, and that its doctrine is not inconsistent with the rule announced and applied in the decisions previously quoted.

It will, moreover, be noted that in the present case, petitioner did not reduce to judgment, or commence an action for the recovery of the unpaid purchase price of these motors, but sued and recovered judgment on only two of the twenty-four notes received. It certainly could not be contended that the payment of these two notes would have resulted in the transfer of the title to such motors to the bankrupt, and I am of the opinion that the recovery of judgment upon such notes, under the circumstances disclosed, had no such effect. There is nothing to indicate an intention on the part of petitioner to waive his right to reclaim this property.

For the reasons stated, the order of the referee must be, and it hereby is, affirmed.